http://www.va.gov/vetapp16/Files4/1630466.txt

Citation Nr: 1630466 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 10-45 498 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUES

1. Entitlement to service connection for skin cancer, to include as due to exposure to ionizing radiation. 

2. Entitlement to service connection for benign neoplasms of the skin, to include erythematous macular lesions and actinic keratosis. 

3. Entitlement to service connection for tinnitus.

4. Entitlement to service connection for a hearing loss disability of the left ear. 

5. Entitlement to service connection for a hearing loss disability of the right ear. 

REPRESENTATION

Veteran represented by: Disabled American Veterans

WITNESSES AT HEARING ON APPEAL

Veteran and Wife

ATTORNEY FOR THE BOARD

S. Reed, Associate Counsel

INTRODUCTION

The Veteran served on active duty in the United States Air Force from February 1987 to July 1991. 

This case comes before the Board of Veterans' Appeals (the Board) from an April 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

The Veteran appeared at a Travel Board hearing at the RO before the undersigned Veterans Law Judge in March 2014. A transcript of the hearing has been associated with the Veteran's claims file. 

This case has been before the Board previously in June 2013 and April 2014. In June 2013, the Board remanded the claim so that the Veteran could be scheduled for a hearing. That hearing took place, as noted above. In April 2014, the Board again remanded the issues listed above to complete additional development. The remand orders in that decision have not been substantially complied with respect to the Veteran's claim for service connection for bilateral hearing loss. Therefore, the case must be remanded again. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 

In addition to the issues listed above, the April 2014 decision remanded the issues of entitlement to service connection for a low back disability, entitlement to service connection for a cervical spine disability, and entitlement to service connection for a right shoulder disability. A September 2014 rating decision granted service connection and assigned disability ratings for all three of these claimed disabilities. The Veteran did not thereafter disagree with the ratings assigned. Therefore, these issues are not before the Board.

Based on the medical evidence of record, and in light of the holding in Clemons v. Shinseki, the Veteran's claim for service connection for skin cancer has been recharacterized to reflect the separate issues of skin cancer and benign neoplasms of the skin, as noted above. 23 Vet. App. 1 (2009) (holding that when a Veteran makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled).

Additionally, the Board has reclassified the issue of a bilateral hearing loss disability based on the medical evidence of record to reflect the distinct legal issues involved for each ear separately. As discussed in more detail below, the Veteran's hearing loss in the left ear cannot be considered a preexisting defect and thus an in-service aggravation analysis is inapplicable to that issue. 

The issues of entitlement to service connection for benign neoplasms of the skin, service connection for a hearing loss disability of the right ear, and service connection for a hearing loss disability of the left ear are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. The Veteran's tinnitus is related service.

2. Skin cancer was not show to be present during the pendency of the Veteran's claim. 

CONCLUSIONS OF LAW

1. Resolving reasonable doubt in the Veteran's favor, the criteria to establish service connection for tinnitus have been met. 38 U.S.C.A. §§ 1110, 1141, 1154, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2015).

2. The criteria for service connection for skin cancer have not been met. 38 U.S.C.A. §§ 1101, 1112, 1113, 1116, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has reviewed the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all the evidence submitted by or on behalf of the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (noting that the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (explaining that the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

Service Connection for Tinnitus

The VCAA describes VA's duties to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). As discussed in more detail below, sufficient evidence is of record to grant the application for entitlement to service connection for tinnitus. Thus, any errors in complying with the notice or assistance requirements with respect to that matter is moot.

The Veteran has asserted that his tinnitus was caused by in-service noise exposure. Generally, service connection may be granted for disability or injury incurred in, or aggravated by, active military service. See 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303 (2015). In order to establish service connection for a claimed disorder, there must be (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999).

For certain chronic disorders shown as such in service, so as to permit a finding that the disorder was incurred during service or within the presumptive period, subsequent manifestations of the same chronic disease at a later date, however remote, are service connected. See 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.303(b), 3.307, 3.309(a) (2015). 

Tinnitus is considered an "organic disease of the nervous system," and is among the chronic diseases listed under 38 C.F.R. § 3.309(a) (2015); Fountain v. McDonald, 27 Vet. App. 258, 263 (2015). Therefore, the presumption of service connection for chronic diseases which manifested originally in service applies to claims for service connection for tinnitus. 38 C.F.R. § 3.303(b) (2015). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); Fountain at 263 (2015). In cases where the presumption found in 38 C.F.R. § 3.303(a) is applied, the second and third elements of Hickson are satisfied and service connection will be granted.

In this case, the issue of a current disability is not contested. The Veteran reported that he experienced tinnitus during the pendency of the claim and the VA examination in February 2013 supports a current diagnosis of tinnitus. Therefore, the first Hickson element is satisfied. 

The evidence is at least in equipoise with regard to whether the Veteran's tinnitus manifested during the Veteran's period of active service. The Court of Appeals for Veterans Claims has found that a layperson is capable of observing tinnitus. Charles v. Principi, 16 Vet. App. 370, 374 (2002). In this case, the Veteran testified in March 2014 that he has experienced ringing in the ears since the time he was in service. This report is supported by the February 2013 and August 2014 VA opinions that state that the Veteran's tinnitus was not aggravated during service. By discussing the Veteran's tinnitus in terms of a preexisting disability, the opinions concede that it was present during the Veteran's period of service. Therefore, the evidence of record consistent with the Veteran's testimony regarding the presence of tinnitus, a chronic disease, during the Veteran's period of active service. 

The Board notes that the value of the VA opinions on this matter goes no further on this issue than to indicate the presence of tinnitus during the period of active service. This is because the opinions treatment of tinnitus as a preexisting disability was improper. Since the Veteran's tinnitus was not noted during his entrance examination, evaluating his tinnitus as a preexisting disability is only appropriate if there is clear and unmistakable evidence that the injury existed before his acceptance into active service and that there was clear and unmistakable evidence that the injury was not aggravated during active service. See 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b). 

In this case there is not clear and unmistakable evidence that the injury preexisted service. The February 2013 and August 2014 opinions discuss the tinnitus as a symptom as at least as likely as not associated with preexisting hearing loss. This conclusion is not sufficient to establish even a preponderance of the evidence, let alone clear and unmistakable evidence, that tinnitus preexisted active service. Moreover, the Veteran submitted an opinion by a private audiologist from June 2016 that stated that although tinnitus is commonly associated with hearing loss, it may develop at any time. This indicates that even the establishment of preexisting hearing loss would be insufficient to establish clear and unmistakable evidence of preexisting tinnitus because there is merely an association between the two conditions. Further, there is no evidence from prior to the Veteran's service. The earliest medical records available are from the entrance examination, which does not document tinnitus. This case has been extensively litigated for over six years and at no point has there been an indication that there are records available that would predate the Veteran's period of active service, let alone that there would be evidence showing tinnitus preexisted service. The Board finds it highly unlikely that such evidence exists and a remand to obtain such evidence would be futile. Therefore there is not sufficient evidence to overcome the presumption of service connation found in 38 C.F.R. § 3.303(b) and the second and third Hickson elements are satisfied. 

Thus the weight of the evidence supports a finding that the Veteran has the current disability of tinnitus and it was present during his period of active service. There is an absence of clear and unmistakable evidence to show the condition preexisted service and an absence of any reasonable probability of such evidence existing. Therefore service connection for tinnitus is warranted applying the presumption of service connection for chronic disease found in 38 C.F.R. § 3.303(b).

Service Connection for a Skin Cancer Disability

Stegall Considerations

As noted above, the Board remanded this issue in April 2014. The Board specifically instructed the Agency of Original Jurisdiction (AOJ) to obtain and associate with the Veteran's claims file VA medical records from the North Texas Healthcare System from February 2010 forward; and if that development indicated the Veteran had a current diagnosis of a radiogenic disease, to include skin cancer, to request any records concerning the Veteran's exposure to radiation and forward them to the Under Secretary for Health for the preparation of a dose estimate. The VA medical records were requested and associated with the Veteran's claims file. Additionally, the Veteran was afforded a new VA examination in August 2014 to evaluate whether the Veteran was diagnosed with skin cancer during the pendency of his claim because the records were unclear. The VA examiner concluded that the Veteran had not been diagnosed with skin cancer during the pendency of the claim. The additional medical evidence did not indicate diagnoses for any other radiogenic diseases. Therefore referral to the Under Secretary for Health was not warranted. Thus, there has been compliance with the Board's remand instructions with regard to the issue of entitlement to service connection for skin cancer. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

Duties to Notify and Assist

VA satisfied its duty to notify the Veteran pursuant to the Veterans Claims Assistance Act of 2000 (VCAA). 38 U.S.C.A. §§ 5100, 5102-5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a), 4.2 (2015).

The VCAA requires VA to assist a claimant at the time he or she files a claim for benefits. As part of this assistance, VA is required to notify claimants of the evidence that is necessary, or would be of assistance, in substantiating their claim, and provide notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b)(1) (2015); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); Dingess v. Nicholson, 19 Vet. App. 473, 486 (2006).

All notice under the VCAA should generally be provided prior to an initial decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). A letter dated December 2009 notified the Veteran of how to substantiate a service connection claim. The letter notified the Veteran of the allocation of responsibilities between himself and VA, and of how ratings and effective dates are assigned. Therefore, the duty to notify is satisfied.

VA's duty to assist under the VCAA includes helping the claimant obtain service treatment records and other pertinent records, as well as performing an examination or obtaining a medical opinion when one is necessary to make a decision on the claim. See 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2015). Here, the Veteran's service treatment records and private treatment records are in the claims file. As noted above, updated VA medical records were added upon remand. Additionally, the Veteran was afforded VA medical examination in connection with the issue of service connection for skin cancer in August 2014. The examiner provided an opinion in his report that was based on an in person evaluation and a review of the Veteran's claims file. The opine was supported by sufficient rationale and provided adequate information necessary to adjudicate the Veteran's claim. These actions satisfied VA's duty to assist the Veteran in developing his claim. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). Thus, the Board finds that there is sufficient evidence to decide this claim, and that further medical opinion is not necessary to decide the claim for service connection for skin cancer. See 38 U.S.C.A. § 5103A(d) (West 2014); 38 C.F.R. § 3.159(c)(4) (2015).

The Veteran was afforded a hearing before a Veteran's Law Judge in March 2014,. At that hearing, the Veteran and his representative demonstrated that they had a full understanding of elements of the claims on appeal, to include identifying the types of evidence and information which would be of assistance in substantiating them. Additionally, the Veteran was offered an opportunity to describe or discuss further any information that would be helpful regarding his claim. Bryant v. Shinseki, 23 Vet. App. 488 (2010). All appropriate due process concerns have been satisfied. See 38 C.F.R. § 3.103 (2015). The Veteran has been accorded the opportunity to present evidence and argument in support of his claim. Accordingly, the Board will proceed to a decision as to the issue on appeal.

Analysis

The Veteran has asserted a claim for entitlement to service connection for skin cancer. He has made statements that infer a claim based on exposure to ionizing radiation because he stated he guarded aircraft and buildings that housed nuclear weapons. Additionally, he has asserted that prolonged exposure to the sun as an alternate causal link to skin cancer. 

In general, service connection may be granted for a disability or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303 (2015). In order to establish service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999).

In this case, the Veteran has not established that he has the current disability of skin cancer. The Board is mindful that the definition of a current disability includes the presence of a disability at any point during the pendency of the Veteran's claim. McClain v. Nicholson, 21 Vet. App. 319 (2007). However the evidence of record does not support the presence of skin cancer during the entire pendency of the Veteran's claim. 

The Veteran filed his claim in November 2009. Dermatology records from October 2010 indicated the Veteran did have skin cancer and it was removed in 2003. This is by in large consistent with the Veteran's own statement that he had skin cancer removed in the 90s. An August 2010 dermatology consult noted that the removal site was well healed and there was no sign of recurrence. The August 2014 VA examiner noted that at the time, there was no medical evidence or documentation to support any remaining skin cancer. Therefore, the evidence only supports a diagnosis of skin cancer in 2003 or before. 

The record does indicate that the Veteran has experienced various benign neoplasms of the skin during the pendency of the claim. These are documented as erythematous macular lesions on his hand and arms and actinic keratosis on the forearm and hand. The August 2014 VA examiner distinguished these conditions from skin cancer. The VA examiner has an expertise in the field of medicine and is competent to draw such conclusions. The August and October 2010 medical records also support this distinction. Therefore, a preponderance of the evidence supports a conclusion that the Veteran did not have a diagnosis of skin cancer during the pendency of his claim. 

The Board does note that the evidence of record did reasonably raise the issue of entitlement to service connection for the aforementioned benign neoplasms of the skin. That issue is addressed in the Remand portion of this decision. 

As a preponderance of the evidence supports a finding that the Veteran did not have current disability of skin cancer during the entire pendency of his appeal, an essential element of service connection, entitlement to service connection for a skin cancer disability cannot be granted.
ORDER

Entitlement to service connection for tinnitus is granted.

Entitlement to service connection for a skin cancer disability is denied. 

REMAND

The remaining issues of entitlement to service connection for benign neoplasms of the skin, to include erythematous macular lesions and actinic keratosis; entitlement to service connection for a hearing loss disability of the left ear; and entitlement to service connection for a hearing loss disability of the right ear lack sufficient development for the Board to make an informed decision on these issues. 

Service Connection for Benign Neoplasms of the Skin

With respect to the Veteran's claim for service-connection for benign neoplasms of the skin, VA has not fulfilled its duty to assist the Veteran. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate.). In particular, the July 2014 examination is insufficient with regard to this claim as it does not include an opinion as to whether the benign neoplasms of the skin are causally related to the Veteran's active service period. 

The Board acknowledges this was not a well-defined issue at the time of the examination. However, that does not negate VA's duty to assist the Veteran. The distinction between the Veteran's benign neoplasms of the skin and skin cancer necessitated a division of the service connection claim for skin cancer into two issues. Further, the examiner's opinion stated that one of the conditions noted, actinic keratosis, is also known as solar keratosis. This notation combined with the Veteran's assertion in the July 2016 appeal brief that his skin conditions may be related to sun exposure, necessitated an opinion as to whether there is a casual nexus between the Veteran's sun exposure in service and the current diagnosis of benign neoplasms of the skin. See McLendon v. Nicholson, 20 Vet. App. 79 (2006) (Finding that and examination with an adequate opinion is required where there is (1) evidence of a current disability, (2) evidence of a related in-service event, injury, or disease (3) an indication that the disability may be related to the in-service event, and (4) insufficient evidence to decides the claim). Therefore, this issue must be remanded for further development

Service Connection for a Hearing Loss Disability of the Left Ear

With respect to the Veteran's claim for service connection for a hearing loss disability of the left ear, the August 2014 VA examiner's opinion is inadequate because it mischaracterized the Veteran's hearing loss in the left ear as preexisting service and did not provide an opinion as to whether the Veteran's hearing loss disability of the left ear was incurred in or caused by an in-service event, injury, or disease. 

In a recent decision by the Court of Appeals for Veterans Claims (Court), it was found that a hearing impairment noted in an entrance examination that does not rise to the level of a disability as defined in 38 C.F.R. § 3.385 is insufficient to overcome the presumption of soundness found in 38 U.S.C.A. § 1111. McKinney v. McDonald, No. 13-2273 (Ct. Vet. App. March 11, 2016). According to 38 C.F.R. § 3.385 (2015) impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 

In this case, the Veteran's entrance examination contained the following audiological findings with regard to the left ear: 

HERTZ

500
1000
2000
3000
4000
LEFT
0
10
0
5
35

The entrance examination does not contain speech recognition scores. However, the available audiological testing data did not indicate a hearing loss disability as defined by 38 C.F.R. § 3.385. There is no single puretone threshold of 40 decibels or greater and there are not three or more puretone thresholds of 26 decibels or greater. Therefore, it was improper to characterize the Veteran's hearing loss disability of the left ear as preexisting. The presumption of soundness should be applied and the opinion rendered in the August 2014 VA examination with respect to aggravation is insufficient for the purpose of adjudicating the issue of service connection for a hearing loss disability of the left ear. 

Service Connection for a Hearing Loss Disability of the Right Ear

With regard to the Veteran's claim for service connection for hearing loss of the right ear, the February 2013 and August 2014 VA examinations are incomplete because they did not adequately address the puretone threshold shifts documented in service. 

The February 2013 opinion stated that there were no significant threshold shifts during active service. The August 2014 opinion stated the original opinion still stands and did not address threshold shifts expressly. In contrast to these opinions, the Veteran submitted an opinion from a private audiologist in June 2016 that noted there were significant threshold shifts during the Veteran's service, noting that a significant threshold shift is one of 10 decibels or more. The Veteran's service treatment record documents threshold shifts of 10 decibels in March 1990. 

The Veteran's entrance examination contained the following audiological findings with regard to the right ear:

HERTZ

500
1000
2000
3000
4000
RIGHT
5
5
5
15
40

In light of the discussion regarding the left ear, the Board notes that the puretone threshold of 40 decibels at 4000 HERTZ is sufficient to establish a preexisting hearing loss disability of the right ear. See McKinney v. McDonald, No. 13-2273 (Ct. Vet. App. March 11, 2016) (Finding that that a contemporaneous recording of an auditory examination threshold is sufficient to constitute a notation of a hearing defect). 

The March 1990 hearing test contained the following audiological findings with regard to the right ear: 

HERTZ

500
1000
2000
3000
4000
RIGHT
5
15
5
25
45

A comparison of the entrance examination and the March 1990 examination show a shift of 10 decibels at the 1000-HERTZ level and 3000-HERTZ level. It is unclear if these shifts represent an aggravation of the Veteran's preexisting hearing loss disability of the right ear because the VA examiner did not discuss them in the rationale. 

Additionally, the private audiological opinion is insufficient to adjudicate the issue because it does not discuss the issue in terms of aggravation. That is to say it does not discuss whether the shifts were part of the natural progression of the preexisting disability. This is particularly important, because the April 1991 service treatment records contain an audiogram that does not indicate a threshold shift of 10 decibels or more, which makes it unclear if the shifts noted in March 1990 represented a chronic worsening or just a temporary flare-up. Therefore, this issue must be remanded for additional development 

Accordingly, the case is REMANDED for the following action:

1. Forward the Veteran's claims file to the author of the August 2014 VA addendum opinion concerning skin diseases, or an appropriate substitute for an addendum opinion to address the etiology of the Veteran's benign neoplasms of the skin. 

A copy of this remand must be made available to the examiner for review in conjunction with this examination. Any indicated tests and studies must be accomplished. All clinical findings must be reported in detail and correlated to a specific diagnosis.

Based on the examination results and a review of the record, the examiner should provide an opinion as to the whether it is at least as likely as not (a probability of 50 percent or greater) that the Veteran's benign neoplasms of the skin began in or are related to active service. 

The examiner should address all relevant statements in the record pertaining to the etiology of the Veteran's benign neoplasms of the skin, including statements made at the March 2014 Travel Board hearing and in the July 2016 appeal brief regarding sun exposure. 

In formulating the opinions, the term "at least as likely as not" does not mean "within the realm of possibility." Rather, it means that the weight of the medical evidence both for and against the claim is so evenly divided that it is as medically sound to find in favor of the claim as it is to find against.

Any opinions offered should be accompanied by the underlying reasons for the conclusions. If the examiner is unable to offer any of the requested opinions, it is essential that the he or she offer a rationale for the conclusion that an opinion could not be provided without resort to speculation, together with a statement as to whether there is additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge. See Jones v. Shinseki, 23 Vet. App. 382 (2011).

2. Forward the Veteran's claims file to the author of the August 2014 VA addendum opinion concerning the Veteran's hearing loss, or an appropriate substitute for an addendum opinion to address the etiology of the Veteran's hearing loss disabilities of the left and right ear. 

A copy of this remand must be made available to the examiner for review in conjunction with this examination. Any indicated tests and studies must be accomplished. All clinical findings must be reported in detail and correlated to a specific diagnosis.

Based on the examination results and a review of the record, the examiner should provide an opinion as to the following:

a. Whether it is at least as likely as not (a probability of 50 percent or greater) that the Veteran's hearing loss disability of the LEFT ear began in or is related to active service. 

b. Whether it is at least as likely as not (a probability of 50 percent or greater) that the Veteran experienced an aggravation of his hearing loss disability of the RIGHT ear during his period of active service. 

c. If the Veteran's hearing loss disability of the RIGHT ear was aggravated during active service, whether the aggravation was due to the natural progress of the disease. 

Temporary or intermittent flare-ups of a preexisting injury or disease are not sufficient to be considered "aggravation in-service." If aggravation is found, please identify to the extent possible the baseline level of disability prior to the aggravation and determine what degree of additional impairment is attributable to aggravation by the Veteran's active duty service.

The examiner should address all relevant evidence of record, to include the Veteran's in-service audiograms dated November 1986, September 1987, January 1989, March 1990 and April 1991; the statements made by the Veteran's private audiologist in June 2016; and the Veteran's statements at the March 2016 Travel Board hearing regarding the onset of his hearing loss and difficulty hearing while in-service. . 

In formulating the opinions, the term "at least as likely as not" does not mean "within the realm of possibility." Rather, it means that the weight of the medical evidence both for and against the claim is so evenly divided that it is as medically sound to find in favor of the claim as it is to find against.

Any opinions offered should be accompanied by the underlying reasons for the conclusions. If the examiner is unable to offer any of the requested opinions, it is essential that the he or she offer a rationale for the conclusion that an opinion could not be provided without resort to speculation, together with a statement as to whether there is additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge. See Jones v. Shinseki, 23 Vet. App. 382 (2011).

3. After ensuring that the requested actions are completed, the AOJ should take any other development actions deemed warranted and readjudicate the claims on appeal. If any benefit sought is not fully granted, the AOJ must provide the Veteran and his representative a Supplemental Statement of the Case (SSOC) before the claims file is returned to the Board, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

_________________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).

Department of Veterans Affairs